Service, please. The next case scheduled for argument this morning is number 21-1233, American Civil Liberties Union v. United States Immigration Service. Dr. Noor Zafar, on behalf of the ACLU Immigrants' Rights Project, may it please support you. Can you draw that closer to you? I apologize. Sure. My 72-year-old ears don't work as well as they used to. I guess maybe I'm too tall for this podium. Is this better? You should show it at us, Ms. Sophia. Is this better? Yes. I think so. Thank you. May it please the Court. This case concerns a novel but simple question. Is substitution of unique IDs a reasonable step to segregate and disclose non-exempt information that ICE creates, maintains, and uses in its databases, and that it can produce using an automated process that the agency concedes imposes no legally relevant burden? The FOIA statute- When you say that legally relevant burden, you're responding to the fact that they've conceded that from the segregation standpoint, that they can't say that it was not reasonable for them to do a segregation. They can't meet that burden, that that's a basis to avoid it? Exactly, Your Honor. And to be clear, we have two arguments in our briefs. I'd like to focus on the segregation argument, under which, of course, burden is relevant, and under which ICE has conceded that the process of substituting unique IDs does not reach the legally cognizable line. Before you get there, don't you have to deal with the argument that what you're asking is for the agency to create a new record? Yes, Your Honor. So the agency argues that unique IDs are a new record because they simply don't exist in ICE's databases. Now we view the issue differently. In regard to that, I'm a border officer, and I've stopped somebody at the border, and I have access to the Immigration Naturalization Service database. If this person's had a prior contact with Immigration Naturalization, and they have an A number, can I search the national database to find out every point of contact that that individual previously has had? Yes, Your Honor, based on- Yes, Your Honor, based on what ICE's declarant below stated, and what ICE- So the A number is what connects all the databases and makes them readable from an individual standpoint, and particularizes them to every individual who's had interaction with the Immigration Naturalization Service. Precisely, an ICE officer- So this isn't an abstract idea. This happens every single day. This is a database, or group of databases, organized along the individual identification number basis that connects all of them. Exactly, Your Honor. An ICE officer, as you suggested, could plug in the A number and pull up all of the enforcement records that are related to that particular number. And that's precisely the information that we seek here. Now the problem is that A numbers are exempt, and we don't dispute that. But the FOIA statute requires ICE to take reasonable steps to segregate the non-exempt information that A numbers convey. And the non-exempt information that A numbers convey is the relational information that connects and links together the enforcement documents. Is segregation different from substitution? Your Honor, so we think that under the, if you look at the text of the statute, the statute requires reasonable steps. We think, and courts have interpreted the segregation mandate broadly and flexibly. So for instance, under FOIA segregation mandate, courts have ordered agencies to, for instance, insert pixels in a video to blur images. They've ordered agencies to alter voices in an audio track. And they've ordered agencies, of course, to insert black reduction bars in the text. So if you look at the text of the FOIA statute, which is expansive and broad and requires reasonable steps. And if you look at historically how courts have interpreted this provision, we think that substitution of unique IDs would be a reasonable step. Because just as blurring is appropriate in a video, we think unique IDs are appropriate for database information. Isn't this more than that? I mean, you're asking for a separate kind of list of a million unique identifiers to be linked to the A numbers and then applied to the several databases that contain the information that you want to link. And in the ACLU versus Department of Justice in 2012, we said that the court can't require the agency to create documents as far as adding language in a neutral identifier. This is more than redaction, but required the addition of some neutral, non-exempt phrase in. Why isn't this very similar to that case? Because requiring the creation of this new list of numbers, associating those with the A numbers, and requiring the insertion of those into the database. Yes, your honor, and as this panel is very familiar with the facts of DOJ, I won't reiterate them. But there, this court held that the substitution of district court generated purportedly neutral phrases that the agency was required to substitute into the legal memoranda altered the meaning of the memoranda. That's not what unique IDs do here. What unique IDs do here is they simply allow for the disclosure of pre-existing relational information. They don't change the meaning of the spreadsheets. They don't add any new information. So an ICE officer looking at the spreadsheets can look at the A numbers and determine if a certain arrest, detention, deportation record has the same A number that those are linked to the same person. Or a particular administration looking at the impact of its policies with regard to separation of families at the border or something else like that could search the database and draw conclusions with regard to its effect upon people who came from Venezuela, from El Salvador, Colombia, various nationalities entering our borders, correct? Correct. Iraq or other countries. Correct. The point is that yes, an officer, an agency official looking at the database could link records together. And that's simply what unique IDs allow us to do here. They just get rid of the exempt A number so that- Well, in fact, by taking the number out, there's no way to understand the interrelational categories because the one thing that identifies them by individuals so that you could have some understanding of the various entries is the A number. Precisely, and in deleting the A number in full and without replacing it, ICE deleted those relational information that it had already created in its database before. But why isn't it unreasonable for the agency to have to create a program, a script of some kind to run through its numerous databases with respect to a million individuals potentially? Doesn't that require more kind of effort and affirmative action and potentially judgment by the agency than the FOIA contemplates? We don't think so, Jana, and there's two reasons for that. So first, ICE has not argued in its briefs that writing the script is creation of a new ID or it requires any judgment. And rightly so, because the 1996 E-FOIA amendments, which brought database information within the purview of FOIA, made clear that accessing this information will necessarily require the application of script or code to be able to extract and filter and arrange and access that information. So Congress made clear in 1996 that doing so does not cross a line into record creation. In fact, that's just a standard procedure whereby someone can access information in a database. Well, they've also- Go ahead, Judge. I'm sorry, Judge. I was going to say, your time is almost up, and I have questions that are going to reveal my lack of knowledge about how these computer systems work. As I understand it, you're looking for spreadsheet data on five aspects of the deportation process. Initial apprehension, risk, classification assessments, detentions, removal, and immigration bonds. Am I correct so far? Correct, correct. If they were to give you that information without the A numbers, that would not be informative for you, because it wouldn't allow you to cross-link, right? Correct. Okay. Is what you're looking for them to put in some other identifier there that then allows you to cross-link? Or are you looking for them to run all this information by A number, give you the links across these five categories, and then delete the A numbers? So in other words, you would just know that person A had had an initial apprehension on a particular date, a detention on a particular date, and an immigration bond. Person B had had four of those five categories. What do you want the material to look like when you get it? Your Honor, so it's the second option that you see. What I just identified. Yes, we want them to delete the A numbers and substitute in unique IDs. But you want them to do the relational thing so that you have it by person, effectively. Precisely, and this can be accomplished in under three and a half hours using a fully automated process. No, go ahead. All ICE would do is they would press run on this script, and because ICE has the A numbers. Well, they would have to run this by every A number they have. Am I right? Again, I know I'm ignorant about this area. They would have to run every A number they have, and then they would be able to give you the picture of that person, then they'd delete the A number. Yes, but just to be clear, this would happen simultaneously for all the A numbers. It's not like an ICE officer has to go one by one and correlate an A number to a unique ID. The script will automatically, again, in under 25 minutes, substitute and replace. That's kind of fun. I'm sorry, the script peels off the A number and inserts some group of letters and or numbers. And there's an association between the A number and that number. But the association between the A number and an actual identity is not passed on to the script number, correct? Precisely, because in the final product, the A number is completely deleted. All we have is unique IDs. Would it be possible, though, for an individual, knowing that a certain arrest took place in Buffalo on a certain date, to then derive the personal information about an individual non-citizen? Your Honor, it may be possible, but it would be very, very difficult, just given how much data there is and how many individuals there are. I mean, we're talking about millions of records here, so it would really be difficult to go back and trace it. But to know what you're looking for and want to check and see. If someone had information about other characteristics, so if they knew when this person was deported, when, if they were detained, where. If they had other pieces of information, they may be able to walk back. But to be clear, the unique IDs will not disclose any of this. Unique IDs- Has INS asserted that that's going to happen? No, not to our knowledge. As a reason not to provide it? No, they have not. What do you make of the concession, then? I was interested, because you didn't answer Judge Carney's question. You didn't say, well, INS has already conceded that this isn't a big deal in terms of segregating it. Segregating the A numbers from the rest of the data while maintaining the interrelationship. The interrelational relationship that the A numbers introduce. And so we think that, given that ICE's concession on burden, again, it just raises the question of why is this not a reasonable step? Why isn't segregating non-exempt, pre-existing relational information- Yeah, you're asking them to segregate the A information, but relieve the impact that at least the A information has into understanding or using the other. Exactly, we're asking them to leave the information that tells us how records are connected. All right, thank you very much. You've reserved a couple minutes for rebuttal. We'll hear from the government. Thank you, your honors, and may it please the court. My name is Zach Bannon, and I'm here to argue this matter on behalf of the government as I did before the district court. Two judicial opinions established the principles necessary to decide this case. First, this court in ACLU versus DOJ in 2012 held that substitution of a neutral phrase in place of a FOIA-exempt information within a record constituted record creation that was not required under FOIA. Well, but Judge Carney and I are a little bit familiar with that opinion, of course. In ACLU versus DOJ, the district court attempted to take a group of information and sanitize it, and scrub out some of the national security concerns and leave what was left. And we said, A, that's problematic in two ways. A, it requires, it creates a new category of information, and B, what that category of information is, and whether it involves national security interests. So I think ACLU versus DOJ is a little bit different. The phrase creates a new document, I understand, is a principle that the courts have seized on. But this is simply substituting a non-identifying series of numbers and letters for a series of numbers and letters that are tied to someone's identity through a computer program that simply, it's as if you black, it's like redacting it. You black it out. Instead of blacking it out, you black it out with AX 105. Why isn't that a reasonable way to do it? Since the existence of that number, which INS uses, or the Immigration Actualization Service uses all the time for its own purposes to understand and the range of data that they collect about an individual, so they plug that number in, then they can understand this individual's history with the service. Why isn't that a reasonable thing to do? Right, Your Honor, the distinction that you draw between the ACLU versus DOJ facts in this case, we think is a little bit more, it's a little bit more similar than what Your Honor describes. In that instance, you could characterize the request as one- Speak into the microphone. Yes, sorry. You could characterize the request as one to preserve the grammatical information that was conveyed by the exempt record, while eliminating- I'm sorry, for what, the grammatical? The grammatical information, so that the document could still be read, but while eliminating the national security exempt information from those same phrases. Much in the same way here, you are eliminating the personally identifying information from an A number, while preserving the relational information. So this sort of neutral phrase substitution goes in between the two in the same way. Let me ask you this, does the Immigration Naturalization Service use the interrelational aspect of these databases by using the A number? No, Your Honor. They don't? No, so there are two- You need to tell me that if an ICE officer wants to know how many times this person has been deported or held, that the A number doesn't allow them to understand that in the database? That's not what I mean to tell you, Your Honor. There are two databases that were discussed in the record in this case. The first is called the EID, and that's the operational database that a CBP officer would use to query an individual to determine whether all of the records associated with them, if they were having an interaction with a person at the border, for instance, in the example that you gave in the opening presentation. The IIDS database, which is the database that's at issue in this litigation, differs from the EID. But isn't one just a subset of the other? That's right, Your Honor. And so, I mean, you're saying that the CBP agent wouldn't query one database, but still the agency uses the A numbers, doesn't it? Exactly who, how, and when may be a little unclear, but irrelevant to Judge Wesley's point, which is that they are used, they are maintained for a reason. Yes, they are maintained for a reason, but FOIA does not give- And what reason is that? In order to trace an individual and make it clear that the same person is the same person. Well, thank you very much. So, let me ask you, if the undersecretary is interested in the number of people coming from Venezuela who are stopped at the border with children, and the children are then separated, was he able to search the database by a particular country? The database allows for the population-based reporting in that sense, yes, Your Honor. And is he or she also able to appreciate the data on an individual basis? In other words, that they could actually quantify the numbers of people? That's right, Your Honor, but by contrast, the IIDS database that's at issue in this litigation does not give the capacity to make population-based, or sorry, individual-based reporting. So there is not a mechanism by which you take the IIDS database- Why do you tie everything by the number then, by the A number then? It's useful operationally in the EID database for a CBP officer who needs to learn about an individual at that point in time. Why is that even relevant to what the government's obligation is to respond to this FOIA request? Were they looking for information that links these detainers, arrests, removals, bond management, risk assessment by individual non-citizen who's involved with the system? Why should the government maintains both databases and uses A numbers to be able to track exactly that kind of information? Why is your answer, why are we talking exactly about the difference boundaries between the two databases? The reason, Your Honor, is because the IIDS database is not used for the kind of tracking that is described here, and FOIA does not give access to all of it. Why do you tie all of them together in that database by the A numbers so that you could do it if you wanted to? The operational purpose for having the IIDS database is not to do individual-based reporting. It's to do population-based reporting of the sort that Your Honor described. You're telling me now that the database that they wish to search, or that they've asked for, is never, ever used, ever? You're telling me as a representative of the government now that this database is never searched on an A number basis to draw conclusions about people, similarly situated individuals. The record in the declaration of Donna Vasilio Diaz, in particular, explains that when a question arises about an individual rather than doing- That's not what I asked you. I asked you about this database, if they use the A number, how it works inter-relational between the various databases. Does INS ever use that capability in this database to search that database? It is my understanding, Your Honor, that they do not, and that it is used to make population-based reports of the sort that you just described. Folks from Venezuela that cross the border at a particular time. And it's your position then that because they don't, that means that they don't, that this is not, that that's not a report that they have, or a data that they have? No, Your Honor, the obligations in your FOIA, of course, don't turn on the way that the records are used. Okay. Yes, so there are two ways you could accomplish, another way of looking at this is there are two ways of accomplishing the task that the ACLU, or sorry, that the ACLU is requesting of the government here, that Judge Raji pointed out before. Which are, you could create a single population-based report that sorts the existing data in the IIDS, or you could take those alien numbers and substitute in unique identifiers. Those two kinds of requests would implicate two different bodies of FOIA law. The first deals with searches, and searches need to be conducted if they're reasonable. So had the ACLU requested the data in that form, and if the IIDS could be queried in a way that would create a population, or an individual-based report that way, it would be required to do so, so long as it was reasonable. That's not what was requested here. Give me a for instance, Megan. So, I mean, we don't, we're not working in this like you folks do, or have the appreciation of it, I think, as fully as you do, and that's understandable. Give me an example of what you're talking about. What if the ACLU had asked for what? If the ACLU had asked for a single spreadsheet of IIDS database where the row of data correlates to an individual. So, instead of having separate populations like they asked for, for detainers, removals, apprehensions, and so on and so forth, they instead asked for the data to be organized in a manner such that it was focused on the individual, rather than the immigration event. If that were the request, then the question would become, can ICE's databases be searched in a way that would be reasonable, that would produce a spreadsheet in that organization, or in that arrangement? And- And what about the other way, doing it by A numbers and then deleting the A numbers when you gave it to them? That implicates the body of law that this circuit and other circuits have developed considering the creation of records, which are not required even- No, no, the record is existing. I mean, it's just crunching your data in a different way, and then deleting the information that you say is shielded. It's uncontested in this case that the unique identifiers that they're seeking do not exist within ICE's database. They say as an attribute of A numbers, relational information is conveyed within the database. But this court's precedent in ACLU versus DOJ, and the DC Circuit's precedent in the DA group- Okay, I'm going to show my ignorance here, but a database exists so that it can be searched. I mean, that's the whole purpose of a database, am I right? And one of the ways this can be searched is by A numbers. You're not creating anything new. That's, it's set up so that you can search it by A numbers, or am I missing something? Not all databases contain all the connections that you could make to search in that regard, your honor. And in this case, ICE's IIDF database is set up to do searches by population. So for instance, in this case, they gave information on- If you have a defendant who is an alien, they can go to you and ask for the A file. Right. So, you know, it's always possible to get the information by A number, no? Yes, through sources other than the source of data that the ACLU does not contest was the appropriate source of data to search in this instance. Well, why isn't what the ACLU is asking, what prosecutor's asking, only they're asking it for the universe of your A number aliens? It would be, the ACLU certainly could make a request like that. They could ask for the alien file of every individual with the alien numbers redacted, right? There would be questions about whether doing so would be required under FOIA, or if it would be too burdensome to do so. But here, as distinct- Instead, what they're asking for is they're telling, well, you know, we're interested in five categories of information. And again, tell me if this is being too simplistic. Don't you take all your A numbers, query these five databases, give them the information, and black out the A number when you give it to them. You don't even have to put Judge Wesley's number of AX10. Don't put any numbers on it. They can number them or letter them, but you give it to them, the five pieces of information for every alien you've got a record for. That's exactly what the ICE did in this instance, Your Honor. They took the populations that were asked for by the ACLU. They downloaded the information from each of the discrete reporting populations. They looked at those reporting populations and said, amongst these data points are A numbers, which are FOIA exempts. And then they redacted that information. So that is what the product- So I'm still a little bit lost here. Do we have that product in the appendix in this case, so that we see what you gave them? Yes, so that's that joint appendix in the, I think, 30 to 70 range is a snapshot of each of the different reporting populations that were received. The ACLU's contention is that- Sorry, tell me the page once again. Sure, so it begins, it's an appendix to the declaration of Donna Vasilio Diaz, and it begins at page 45 and ends at page 60, 70 something. So it gives them the departed date, the place of departure, the country, and then the case status. But what doesn't it give them among the five categories? It doesn't tell them initial apprehensions, or am I not reading something right? It does. We gave them all of the reporting populations that they requested. What it doesn't give them is alien numbers. It doesn't give them- Alien numbers. Right. Right. And they say by depriving them of alien numbers, we deprive them of the ability to do a comparison between one spreadsheet and another. I thought they conceded that the alien numbers themselves were exempt. Yes, that's correct, Your Honor. But what I see on this, on page J46, is a departed date, point of departure, departed to country, and case status. But it doesn't give information that links this particular individual to any detainer, any arrest, any removal order, any bond management, or risk assessment. Right, and to be clear, Your Honor, and I apologize for the poor formatting of the exhibit itself, but the removal sample continues on the subsequent pages. But you are correct to say, nonetheless, that there is no unique identifier that was created in place of A numbers so that that tracking could be done. But in order to get the information that the ACLU is seeking, I have to compare these few pages to what? If they were to be provided with a unique identifier, you would look at that particular unique identifier and compare it to, for instance, the next exhibit, which is the 2013 detention sample. Right, and so my question to you is, instead of giving them separate documents, why can't you do the relational search and just not give them the A numbers then? I'm sorry if that's a simplistic question, but I understand why they say without a number or an identifier, they can't really compare these documents or draw connections between them. Why can't you do that, but take out any identification information? Yes, Your Honor, that's the single spreadsheet solution, that we would instead combine all the data in the first instance. Right, and that would be something that the ACLU could request, and we could have a different litigation about it, about whether the burden- So is the problem here that they just haven't requested it in that form, and if they only made that request, you'd give it to them? I can't say for certain that we would give it to them in that form, because there would be different questions that would be presented by that litigation. We'd like to settle the case, you know, and get this resolved. I'm sorry, but if the answer is as simple as ask the question in a different form, maybe we can see if the ACLU's willing to ask it that way. And following up on Judge Radji's comments, I'd like to clarify. You say that the record shows that ICE does not maintain a computer process to do what they seek, that is to add a unique identifier that would make the material that you provided to them more accessible and usable. And you say that you'd have to create a program that would then process millions of entries. And of course, millions of entries is kind of not a meaningful specter in the context of large databases that we're all very familiar with, and you drop a footnote. You say that the government's concession was that the burden at issue would not meet the threshold applied to the burden for segregability. But that's different from saying there's no burden at all. So you're saying that it does not reach a standard of unreasonableness or a weight of a burden that would prevent it from having to segregate the data. And basically, I understood this to say, this is a very minimal burden, but you're relying really on your other arguments that this is creating a new record and doing something that, creating a process that is something the agency just doesn't want to do. Exactly. If this was a mechanism by which to segregate, which is a point that we can test, then it wouldn't meet the burdens for segregability. But it's our position that this is not a mechanism of segregation of information, because it's taking one discreet piece of information and segregating it into its attributes. When you're saying it would not meet the burden for segregability, you're saying that it is a reasonable method to segregate. No, Your Honor. We're saying it is not a method to segregate at all. That what they're asking for here is to take one individual record, which could be a data point or a word, and to separate that individual data point into its attributes, which is what this court said in ACLU versus DOJ was not required. Well, let me just ask directly. Is it a real problem to write the script that would be necessary to apply a unique identifier in place of the A number? The record reflects that doing so would take between one to two days of labor to do, which wouldn't meet segregability standards. And that's based on the affidavit of your expert and is countered by their expert. That's correct. So the dispute would range then from a few hours to a day or two. And the problem is subjecting record creation to the same kinds of reasonableness analysis that is applicable to things like segregation or things like searches. I don't know. I've still, with all due respect, I wrote the ACLU versus DOJ. And I just had a hard time seeing how this shoe fits. This is, what we're talking about here is not, it's putting aside the judge and national security problem. That is the other side of that coin. This is simply saying, replacing something that has a function to it. It has no informational value whatsoever, other than the fact that it ties information related, all the information that's related to that number in the other databases together. So that when someone looks at that particular number, and they look across the columns at the various data columns, they're all relevant to that number, right? Yes, the function is itself information. When you remove that, and A, you organize your information and your databases that way. You say you don't use them, but you organize them that way, and you concede that. That the databases are organized in a way that contains alien numbers? That they can be searched by the A number. Every database is organized by the A number, correct? The EID is organized in a way, which is the database that's not in this litigation, that can be queried by A numbers. The databases that we're talking about that are relevant here are all searchable. If I want to use the databases that are in play here, and I want to look up a particular alien, you have organized it, particularized by A numbers, have you not? No, it's organized in a case-centric or event-centric way. So it's organized by detainer populations, by removal populations, and so on and so forth. Each of those populations contains A numbers, but the organizational structure is not founded on A numbers, if that makes sense to you. But employing the A number would produce a response from those databases that would give you the information for that A number, correct? The databases cannot be sorted on a person-centric basis in that way, your honor. You can be queried and give separate reporting populations based on detainers, based on apprehensions. But the other question of whether you could instead organize it by person, for instance, the single spreadsheet solution that we discussed earlier, there's no record on which a decision could be made. Because the ACLU did not request the data in that format, there is no record about whether the IIDS could be queried in such a way. If I have an alien's A number, can I find out his initial apprehension information? Through use of the IIDS database? Through any database. If I have the A number, and what I'm looking for is initial apprehension, is that going to allow me to find out? Yes, your honor, through the EID database or through an A file. If I have the A number, can I find out what his risk classification assessment is? You could, your honor. If I have the A number, can I find out his detentions? Of course. And his removals? Mm-hm. And his immigration bonds? Actually, the immigration bond data does not include alien numbers, but I think you- And is that because that's with the immigration court, or what's the problem with finding out what his immigration bonds are? I'm not sure why that particular report doesn't include that as a data field. Okay, but at least of the five things they want, four, if you put in the A number, you could get for them. If you put the A number into a program separate and apart from the databases that were searched as part of this litigation, you could do that. But there's no record on which the court could decide that the IIDS database, which is organized by a case-centric or event-centric view, could be searched in the same way. It's the EID- Well, is that, they didn't ask for it limited to that database, right? They just want the information as to these five categories, or am I mistaken? They did ask in their FOIA request for the reporting given back to them to be modeled off of prior FOIA requests that were where the productions came out of the IIDS database, and they have not contested that we searched the correct databases here. The EID is an operational database, so to query it for reporting purposes would compromise the integrity of the data in a way that could compromise law enforcement activity, which is why the IIDS contains discrete snapshots of the data from the EID that is well-fitted to population-based reporting that can be done to stakeholders, to Congress, to FOIA requesters. So what is the way that ACLU can get the information that it seeks and that's available to the agency? What question does it need to ask? If the ACLU were to instead request the data as a single spreadsheet, then we would have a different litigation in which the question would be- But why would it be a litigation? Because I am not sure and cannot say based on the record that's before this court that the IIDS system that would be queried to produce that report has the capacities to, in a reasonable manner, produce a report in that way. So there would be fact finding on whether the IIDS- So we know this is information available to the agency and generatable by applying the A number, but because in the format requested and the database identified to date, it requires the addition of some computer programming and the use of unique identifiers, the agency declines. Is that right? I cannot speak to whether it would be possible for the agency to produce this report in the other format. So it could be the case that it couldn't be done either way. And this is a feature of FOIA that when information is stored in a way that's not producible to a FOIA requester, or if someone's asking to make use of an agency's capacities rather than to see a pre-existing record, sometimes the information is not available to the FOIA requester. Because those concepts are somewhat malleable, particularly in the context of a large database. Of course. Yes, thank you very much. Thank you. Okay, we'll hear rebuttal. I'd just like to pick up quickly on two points that were raised in the government's argument. So first, I would say bottom line, the government links enforcement records based on A number. And that is found in the joint appendix at 42, paragraph 20, where their declarant states that, as well as in government's brief, page 6. So even in the I- Say it slowly again, because I'm having trouble hearing you. I apologize. So joint appendix 40- Maybe you can just move the mic up a little bit. Would that help a little? Or stand close to one of them? Yeah. Joint appendix 42, that's the Vassilo-Diaz declaration at paragraph 20, which says that A numbers connect all entries to a person, which means all enforcement record entries are connected on a person-centric basis based on the A number. Which, in common terms, just means A numbers link enforcement records, even in the IIDS database. I think I just heard counsel say that doesn't apply to immigration bonds. Do you have reason to think otherwise? So yes, I would say it's not clear from the declaration whether the bond database contains A numbers, but the rest, the other four do. Yes, I understood that. Okay. Further- So you're pointing to JA 42, paragraph 20, and there was another- Yes, and government brief at page 6. And that's where the brief says, quote, the only piece of information stored in a row of IIDS data that connects an entry uniquely to an individual is that individual's A number. Yeah, that's why today's argument, I feel, is disconnected from what I've read. But, very disconcerting to me. Tell me exactly what, you've asked for the A numbers because it's your view, or a substitute for the A numbers. Because it's your view that if the information that's contained in the relative databases is organized by a substitute for the A numbers, it's readable or usable for you. Why? Why? We're asking for relational information, which is information that ICE has created in its databases, and it maintains this information, and it uses this information. And what I mean by that is, when an ICE officer plugs in an A number, they can pull up all of the enforcement records that are associated with that A number. So this is something that ICE has inscribed in its database. Like they know- Stop for a second, I apologize, but it's important, at least to me. He says, well, an ICE officer uses a different subsystem, and that's not the system that you asked about. And we don't do that on this IIS system. What's your answer to that? I say that's contradicted by the government's declaration and what's in its brief, because what's relevant here is that A numbers link records. Now, maybe it is true that a government officer cannot search the IIDS in this way, but that's not relevant. What's relevant here is the fact that the A number links the records together. And what we're asking for is information on those links, which do exist. His answer to that is the IIDS database has never searched that way. What's your answer to that? And so therefore, this is not a record that we keep. What's your answer to that? FOIA doesn't turn on how an agency is able to search its database. FOIA turns on whether this is information that the agency has created, maintains, and uses. And ICE creates, maintains, and uses information on how records are linked. So your answer is that's irrelevant? Yes, how the agency searches its database is irrelevant. The ultimate point is whether this is information that the agency has maintained in its databases, and we aver that it has. I'm a little confused now. I didn't think you wanted how they link it. I thought you wanted the information on each alien. You wanted each alien's five, how they fit each of the five categories. And that's why I was suggesting to you and to the government that they run their programs by A number, give you the line of process to each person with respect to initial apprehension, risk classification, not separately the way they have given it to you, but with a line for an individual. Then they delete the A number from it. Is that acceptable to you as a response to your query, or do you want something more than that? That's acceptable to us, Your Honor, because in that instance, what we can do is we can look at the spreadsheet that ICE has provided and determine that a certain arrest record and a certain detention record and a certain deportation record all belong to the same person. Right now, we can't do that because we don't have A numbers, which are properly exempt, but we also don't have unique IDs. So there's no way for us to correlate the different enforcement sets. Perhaps to give an example, it's as if ICE had maintained individual folders on each person, but then when it came time to produce information, it took all the documents out, jumbled them together, and then gave them to us. That's exactly what ICE did here, because ICE, in its database, has these records linked on a person-centric basis. But because it didn't give us unique IDs, we have no way of correlating that information in the exact same way that ICE already correlates it. The government has suggested at various times that there's a problem with what you asked for. I mean, does it make any sense for the two sides to sit down and make sure that the query is one that they can respond to? I mean, we have attorneys on staff who help with settlements. We have the ability to send you back to the district court. I mean, is there some miscommunication that's been a problem here? Your Honor, so we're certainly open to further conversations with ICE, but I would just like to emphasize that this distinction only underscores the extremely formalistic position ICE is taking here. ICE stated that if we had asked for one large consolidated spreadsheet that merged all the five spreadsheets they produced, but where each row represented one individual and all the columns were that person's enforcement records, that that might be acceptable. Unique IDs are functionally the exact same thing, and ICE has already conceded the burden point. So we requested unique IDs because that's an easier way for that it could disclose in this massive consolidated spreadsheet, which would be really unwieldy for us to use and probably more complicated to produce. Your argument there is that's creating a new document, or that's adding information, whereas what we're suggesting is the deletion of information, namely the A number. Yes, but again I would- Producing the spreadsheet under their theory is a new document too, isn't it? Yes, I would say so, because that spreadsheet- That's this database, and they don't organize it all along unique, they don't search along unique identities. So I don't understand how they're willing to produce it in paper, but not produce it digitally. It's a curious position for the government. Your Honor, we have the same question, but again, I think that just underscores how incredibly formalistic ICE's argument is. All right, thank you very much. Thank you very much. Thank you both. Well argued, we'll reserve decision.